**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

NURBEK ZHAKHONOV,                    )
                                     )
              Petitioner,            )
                                     )
v.                                   )          Case No. CIV-26-350-J
                                     )
SCARLET GRANT, et al.,               )
                                     )
              Respondents.           )

**ORDER**

Petitioner Nurbek Zhakhonov, a noncitizen from Russia proceeding pro se, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241.  [Doc. No. 2].  The matter was referred to United States Magistrate Judge Amanda L. Maxfield consistent with 28 U.S.C. § 636(b)(1)(B), (C).  Judge Maxfield issued a Report and Recommendation recommending that the Court deny the Petition.  (Rep. & Rec.) [Doc. No. 12].  Petitioner filed a timely objection (Obj.) [Doc. No. 13], triggering de novo review of those portions of the Rep. & Rec. to which a specific objection is made.  *See Quint v. Vail Resorts, Inc.*, 89 F.4th 803, 808 (10th Cir. 2023).  Respondents did not object and have waived the right to appellate review of the factual and legal issues addressed in the Report and Recommendation.  *See Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

For the reasons discussed below, the Court DECLINES TO ADOPT the Report and Recommendation and the Petition is GRANTED IN PART.

I.    **Background**

Petitioner is a native and citizen of Russia who arrived at California's San Ysidro Port of Entry in August 2022 and requested asylum during inspection.  In December 2022, he was served a Notice to Appear initiating his removal proceeding and designating him as an arriving alien. [Doc. No. 10-1]. Petitioner was granted humanitarian parole under 8 U.S.C.

§ 1182(d)(5)(A) and, in January 2023, Petitioner filed his I-589 Application for Asylum and Withholding of Removal. [Doc. No. 10-3]. In October 2025, Petitioner was re-detained by Immigration and Customs Enforcement (ICE). In his Petition, Petitioner asserts that his continued detention without a hearing violates his right to due process. Additionally, Petitioner contends his detention without a warrant, without probable cause of criminal activity, without a judicial determination of probable cause, and without any individualized finding that he poses a flight risk violates the Fourth Amendment.[1]

## II.    Report and Recommendation

Upon review, Judge Maxfield concludes that Petitioner's detention is governed by 8 U.S.C. § 1225(b)(1) because, after the termination of his humanitarian parole, he reverted to the status of an arriving alien seeking admission and became subject to mandatory detention. *See* Rep. & Rec. at 4–12. Judge Maxfield further finds that Petitioner has failed to establish a Fifth Amendment due process violation because his detention is authorized by statute, is not indefinite, and remains tied to ongoing removal proceedings with a scheduled immigration hearing. *Id.* In reaching this conclusion, Judge Maxfield notes that neither the length nor circumstances of Petitioner's detention entitle him to release or a bond hearing. *Id.*

## III.    Analysis

### A.    Petitioner's Detention is Governed by 8 U.S.C. § 1226(a)

As an initial matter, the Court recognizes that Petitioner does not expressly assert a standalone claim challenging the statutory basis for his detention. *See* [Doc. No. 10 at 10 n.4 ("As master of his petition, Mr. Zhakhonov seeks relief only under the Fifth Amendment's Due Process Clause and the Fourth Amendment.")]. Rather, Petitioner's principal contention is that his

---

[1] Because the Court grants Petitioner relief, it declines to address his Fourth Amendment claim.

continued confinement without a hearing violates the Due Process clause because it has become effectively indefinite.  [Doc. No. 2 at 5, 7–9].  The Court nevertheless concludes that the issue of whether 8 U.S.C. § 1225(b)(1) or 8 U.S.C. § 1226(a) governs Petitioner's detention is properly before it.

First, Petitioner proceeds pro se, and the Court therefore construes his filings liberally.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  "[T]his rule means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."  *Id.*; *see also Akhalaia v. Figueroa*, No. CIV-26-133-R, 2026 WL 637620, at *2 (W.D. Okla. Mar. 6, 2026) (declining to adopt an interpretation of the Petition that would be "too restrictive").  At the same time, the Court does not assume the role of advocate and does not supply facts or claims that have not been presented.  *See Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009).

Second, and more importantly, determining the statutory basis for Petitioner's detention is a necessary step in resolving the due process claim that Petitioner asserts.  Indeed, both Judge Maxfield and Respondents begin their analyses on this threshold issue, implicitly recognizing that the Court must first determine the source of the Government's detention authority in order to evaluate the merits of Petitioner's due process claim.  Rep. & Rec. at 4; [Doc. No. 10 at 14].  Whether Petitioner's detention is governed by § 1225(b)(1) or § 1226(a) directly affects the nature of the process to which he is entitled and the framework through which the Court evaluates the legality of his continued detention.  Thus, the Court does not construe the Petition as asserting a new, freestanding statutory claim.  Rather, because the legality of Petitioner's continued detention

depends upon the source of the Government's detention authority, the Court must determine whether § 1225(b)(1) or § 1226(a) governs before it can resolve Petitioner's due process claim.

Upon review, the Court concludes that Petitioner's termination of humanitarian parole did not automatically return him to mandatory detention under § 1225(b)(1). As this Court has previously recognized, parole under 8 U.S.C. § 1182(d)(5)(A) does not, by itself, revert Petitioner's status back to that of an arriving alien. *See Kumar v. Johnson*, No. CIV-26-352-J, 2026 WL 937560 (W.D. Okla. Apr. 7, 2026). Numerous courts have likewise concluded that a noncitizen's detention does not necessarily revert to § 1225 upon termination of humanitarian parole. *Drozdov v. Lyons*, No. CIV-26-365-SLP, 2026 WL 1470929, at *2–3 (W.D. Okla. May 26, 2026); *Salgado v. Francis*, No. 25-CV-6524 (VEC), 2026 WL 915304, at *4–6 (S.D.N.Y. Apr. 3, 2026); *Capote Zamora v. Mullin*, No. 26-CV-00538-PAB, 2026 WL 1026810, at *3 (D. Colo. Apr. 16, 2026) ("[R]egardless of whether petitioner was detained pursuant to § 1225(b)(1) or § 1225(b)(2) upon his initial entry into the United States, petitioner's detention did not revert back to § 1225 when his parole was terminated."); *see also Cunha v. Freden*, 175 F.4th 61, 85 (2d Cir. 2026) (rejecting broad reliance on the "entry fiction" doctrine in the detention context). And while the Court recognizes that some courts have reached a contrary conclusion, *see, e.g., Martinez v. Hyde*, 792 F. Supp. 3d 211 (D. Mass. 2025), this Court respectfully declines to adopt that approach.[2]

---

[2] The Court has also carefully reviewed *Sierra v. INS*, 258 F.3d 1213 (10th Cir. 2001), and *Suarez-Tejeda v. United States*, 85 F. App'x 711 (10th Cir. 2004), but does not find either case dispositive. In *Sierra*, a Mariel Cuban challenged his withdrawal of parole based on his criminal history without a hearing after officials rescinded a recommendation that he be released from detention. 258 F.3d at 1215–18. The Tenth Circuit's discussion did not address whether a noncitizen's re-detention following termination of parole is governed by 8 U.S.C. § 1225 or § 1226. *See Flores v. Leyva*, 4:26-CV-00060-DN-PK, 2026 WL 1830958, at *14 (D. Utah June 25, 2026). Likewise, *Suarez-Tejeda* merely recognized that parole granted to a Mariel Cuban arose under § 1182(d)(5)(A). 85 F. App'x at 712. Neither decision considered the statutory detention framework presented here, much less held that termination of parole automatically subjects a noncitizen to mandatory detention under § 1225(b)(1).

Here, Petitioner's current detention is not part of the inspection process, nor does it arise from an attempted entry at a port of entry.  Rather, Petitioner was paroled into the United States, permitted to reside in the interior of the country for several years, pursued his asylum application, and complied with the conditions of his release before being re-detained during a routine check-in with immigration authorities.  Under those circumstances, Petitioner's detention is more naturally characterized as detention "pending a decision on whether the alien is to be removed from the United States" within the meaning of § 1226(a).  *See Rafibaev v. Noem*, No. 26-CV-00461-PAB, 2026 WL 607559, at *2 (D. Colo. Mar. 4, 2026) ("[W]here petitioner has been released on parole pursuant to § 1182(d)(5)(A) for nearly two years, it is illogical to suggest that his re-detention is governed by § 1225(b)(1), which . . . governs procedures for the inspection of aliens arriving in the United States who have not been admitted or paroled.") (citation modified).

Accordingly, consistent with the growing body of authority addressing this issue, the Court concludes that Petitioner's present detention is governed by § 1226(a), not § 1225(b)(1).

**B.      Petitioner is Entitled to a Bond Hearing**

Unlike § 1225(b)(1), § 1226(a) contemplates individualized custody determinations and authorizes release on bond or conditional parole pending completion of removal proceedings. Thus, as Respondents acknowledge, the process afforded by § 1226(a) itself serves as the mechanism through which a detainee's liberty interest is protected.  *See* [Doc. No. 10 at 14–15 (recognizing the "INA provides the only process due under the Constitution")].

Here, the Immigration Judge (IJ) declined to conduct a bond hearing after concluding that Petitioner was subject to mandatory detention under § 1225 and therefore fell outside the immigration court's bond jurisdiction.  [Doc. No. 10-7].  Because that conclusion was erroneous,

5

Petitioner was denied the very process Congress prescribed for detainees held pursuant to § 1226(a).  As one court within this Circuit explained:

> Because this Court holds that § 1226 governs Petitioner's detention, the due process owed to Petitioner is that provided for in § 1226—namely, an individualized bond hearing before an IJ.   Having erroneously concluded that Petitioner was mandatorily detained under § 1225, the IJ in Petitioner's case declined to make an individualized assessment of whether Petitioner posed any danger to the community, threatened national security, or was at risk of flight.   Thereafter, Petitioner's continued detention without the bond hearing that should have been provided to him pursuant to § 1226 constitutes an ongoing violation of his constitutional right to due process.

*Velasquez Salazar v. Dedos*, 806 F. Supp. 3d 1231, 1241 (D.N.M. 2025).  The Court finds that reasoning persuasive.  And, because the Court concludes that Petitioner's detention is governed by § 1226(a), it need not decide whether the length of Petitioner's detention independently violates the Due Process clause.  The proper remedy is an individualized bond hearing before an Immigration Judge exercising jurisdiction under § 1226(a).

### III.    Conclusion

For the reasons above, the Court DECLINES TO ADOPT the Report and Recommendation [Doc. No. 12] on de novo review and GRANTS IN PART Petitioner's Petition for Writ of Habeas Corpus in so far as it finds Petitioner is entitled to a bond hearing.  Accordingly, the Court ORDERS Respondents to provide Petitioner with a prompt bond hearing pursuant to 8 U.S.C. § 1226(a) within seven business days or otherwise release Petitioner if he has not received the hearing within that period.  Respondents shall certify compliance within ten business days of this Order's date.

A separate judgment will enter.

IT IS SO ORDERED this 29th day of June, 2026.

BERNARD M. JONES, II
UNITED STATES DISTRICT JUDGE